## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAFAYETTE DIVISION

Nexen Petroleum U.S.A., Inc.                    Civil Action No. 6:13-00604

versus                                          Judge Rebecca F. Doherty

Ensco Offshore Co.                    Magistrate Judge Carol B. Whitehurst

## MEMORANDUM RULING

Currently pending before the undersigned, on referral from the district judge for ruling, is the defendant, Ensco Offshore Company's ("Ensco"), Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a); Memorandum Of Points And Authorities In Support; Declarations Of Jason Morganelli And James C. Winton, [Rec. Doc. 23], the plaintiff, Nexen Petroleum U.S.A., Inc.'s ("Nexen"), Opposition [Rec. Doc. 29], and Ensco's Reply thereto [Rec. Doc. 32], as well as Nexen's Traversal Memorandum [Rec. Doc. 48] and Ensco's Reply to the Traversal [Rec. Doc. 54]. After considering the applicable law, the written submissions and arguments of the parties, and for the following reasons, the motion is granted.

*Factual and Procedural Background*

This action arises out of a drilling contract dispute between Nexen and Ensco. Both Nexen and Ensco are Delaware companies with their principal places of business in Houston, Texas, and both are authorized to do and doing business in the State of Louisiana. At the time of the subject events, Nexen was an upstream oil and gas company that developed energy resources in the Gulf of Mexico, and Ensco was an offshore drilling services company that operated in the Gulf of Mexico.

Beginning in 2005, Ensco entered into contracts for the construction and use of deepwater dynamically positioned semi-submersible drilling rigs known as the ENSCO 8500 Series Rigs. Nexen and Ensco entered into a Offshore Daywork Drilling Contract (the "Contract") dated September 1, 2007, in which Ensco agreed to provide to Nexen the ENSCO 8502 Rig ("the Rig") to conduct certain drilling activities on Nexen's behalf in accordance with the terms of the Contract. The Contract terms included agreed-to day rates for the Rig ("Dayrates").  Nexen had previously contracted with Ensco on January 18, 2006, for the construction and use of another rig, the ENSCO 8501.[1] Both rigs were contracted for drilling projects ". . . in federal waters on the Outer Continental Shelf ("OCS")in the Gulf of Mexico ("Area of Operations") (and other areas as may be mutually agreed by the Parties by amendment hereto. . . .)". *R. 23; 32-1, p. 4.*

In last Spring of 2011, Nexen directed Ensco to move the Rig to the "Kakuna" well in the Gulf of Mexico, south of Louisiana. During the Kakuna well installation, Nexen attempted to reject the Rig asserting that the Blowout Preventer ("BOP") failed to comply with new interpretations of certain  regulations enacted as a result of the DEEPWATER HORIZON incident. Delays occurred due to re-engineering and modifications made to the Rig by Ensco under Nexen's supervision. Ensco submitted invoices to Nexen during the course of the project at the various Dayrates specified in the Contract. The Kakuna drilling project was completed in June 2012. Nexen paid

---

[1] In 2011, Ensco filed a lawsuit against Nexen in the Southern District of Texas, Houston Division, to recover outstanding Dayrate payments due under the Ensco 8501 Contract. While discovery was on-going, the parties settled the case at mediation.

all outstanding invoices by November 19, 2010, but only after negotiations between the parties in Houston as to which rate applied and for how many hours.

Nexen filed this lawsuit against Ensco on March 25, 2013 to recover damages for breach of the Contract and unseaworthiness of the Rig and crew, as well as a number of state law claims including negligence, detrimental reliance and unjust enrichment. *R. 1; 8, ¶¶ 22 - 46.* Specifically, Nexen alleged a refund of over-payments related to allegedly erroneous Dayrates for certain days and delays caused by Ensco's unsatisfactory equipment and performance. *Id. at ¶ 20.* Following a summons being issued but not served on Ensco, the case was stayed and administratively closed in order for the parties to pursue settlement. *R. 3.* After settlement attempts failed, Nexen filed a motion to reopen this matter and return it to the active docket which was granted on September 29, 2014. *R. 5.* On October 3, 2014, Nexen filed an Amended Complaint. *R. 8.* Ensco filed an answer and counterclaim on December 5, 2014. *R. 17.* In its First Affirmative Defense, Ensco asserted this case should be transferred to the United States District Court for the Southern District of Texas, Houston Division, under 28 U.S.C. § 1404. *Id., ¶ 49.*

On January 27, 2015, Ensco filed the motion at bar representing that it would be inconvenient and burdensome for it to defend this lawsuit in the Western District of Louisiana. Through the declaration of Jason Morganelli, Ensco's Operations Manager on the ENSCO 8502, *R. 23-1,* Ensco represented that the bulk of the witnesses provided in the parties' Federal Rule of Civil Procedure 26(a)(1)(A)

3.

disclosures[2] reside in the Houston area, in the Southern District of Texas, or in Texas, while only one witness resides in Louisiana—not in the Western District of Louisiana. *Id.* Morganelli's Declaration listed Nexen's business address as the location for all the Nexen witnesses. *Id.*

In opposition to the motion, Nexen argued that the case is properly in this Court in part because the private and public factors establish that the Western District of Louisiana in Lafayette is the more convenient forum, but primarily because Ensco's representations as to the residences of the witnesses were unreliable. In support, Nexen submitted the declarations of Donald Haney, Nexen's Human Resources Business Partner, and Tina Mares, Nexen's Payroll/HRIS & Benefits Manager in the Human Resources Department. Haney provided "last known" residential addresses for three of the former Nexen employees listed by Morganelli, *R. 29-1,* and Mares provided the "last known address[es]" for eight of the Nexen employees listed by Morganelli, *R.29-2.* In its reply to Nexen's opposition, Ensco attached the Supplemental Declaration of Morganelli and the Declaration of Elizabeth Gallimore, Ensco's HR Manager, providing additional information as to the location of the employees in question. *R. 32-1; 32-2.*

On May 26, 2015, the parties' motion to file unredacted versions of the declarations and submissions was granted. *R. 33.* The parties filed unredacted declarations of Morganelli, Haney and Mares, and Ensco included unredacted copies

---

[2] Ensco submitted 13 names and addresses of persons with relevant knowledge employed or formerly employed by Ensco and 9 names and addresses of persons employed at the time of the events in question by Nexen. *R. 34, pp. 7-9.*

4.

of its May 4, 2015 Responses to Interrogatories which provided addresses for 13 Ensco employees as well as its "Supplemental Disclosure RE Ensco Personnel" which it had e-mailed to counsel for Nexen on March 6, 2015. *R. 34-4*.

On May 27, 2015, Magistrate Judge C. Michael Hill, the undersigned's predecessor, conducted a hearing with oral argument on the instant motion. *R. 35*. Based on Nexen's objection to Ensco's witness information providing "last known" addresses, Judge Hill determined that the issue was whether or not Ensco had provided "proper proof" of the witnesses' residences. While Judge Hill stated, "if the witness breakdown is as Mr. Winton [counsel for Ensco] says it is in the ... declaration, I'm inclined to grant this motion, but I can't do it based on the declaration that you have." *R. 42, Transcript, p. 22*. Judge Hill took the motion under advisement and ordered Ensco to file revised declarations supplementing the evidence with more specific address information than "last known." *Id. at pp. 20, 22*. Judge Hill further ordered that Nexen could "try to traverse the [declaration] by ... deposing whoever makes the declaration." *Id. at p. 21*.

On June 1, 5 and 9, 2015, Ensco supplemented its motion with the declarations of several members of its Human Resources Department and defense counsel, real property records, searches using LexisNexis Accurent service, and Nexen's filings in this case. *R. 37; 39; 41; 45*. Ensco updated and corrected the addresses of two of the Nexen employees provided by Haney and Mares and indicated that it was unable to confirm addresses for the international witnesses. *Id.* On June 17 and 18, 2015, Ensco further supplemented its declarations with certified copies of appraisal district

records identifying real property addresses for certain witnesses. *R. 46, 47, 53*. Over Nexen's objection to allowing leave to file the records, *R. 51,* the Court granted Ensco's motions to file, first redacted records, and then unredacted records under seal. *R.49, 52*.

Nexen filed its traversal to Ensco's supplemental documentation on June 19, 2015. *R. 48*. Nexen argues that Ensco's evidence of the witnesses' residences is not sufficient to meet its burden of proof to support transfer under § 1404. Nexen further argues that the factors relating both to private and public interests as advised by the jurisprudence support that Nexen's choice of venue should be upheld.

Ensco was granted leave to file a reply to Nexen's traversal on June 29, 2015. *R. 54.* Ensco attached a list of twenty-four employees identified as potential witnesses and provided the address, status, and federal court district in which they reside. Ensco further indicated the source of information as to each employee. *Id.* Ensco contends that transferring this matter to the, would be in the best interest of both parties and their witnesses as twelve of the witnesses are located in the Southern District of Texas, while none are located in the Western District of Louisiana.

## Applicable Law and Analysis

### A. Standard for Change of Venue under 28 U.S.C. § 1404(a)

Under 28 U.S.C. § 1404(a), "[f]or the convenience of the parties and witnesses [and] in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). This language is

permissive rather than mandatory, and, accordingly, a transfer pursuant to this section is within the court's sound discretion. *Jarvis Christian College v. Exxon Corp.*, 845 F.2d 523, 528 (5th Cir.1988). Before a court may exercise this discretion, however, it must resolve the threshold issue of whether a plaintiff's claims could have been properly brought in the judicial district to which the transfer is sought. *In Re Volkswagen, A.G.*, 371 F.3d 201, 203 (5th Cir.2003) ("Volkswagen I").

If the motion survives this threshold determination, the movant then bears the burden of demonstrating that a transfer of venue is warranted. *See Peteet v. Dow Chem. Co.*, 868 F.2d 1428, 1436 (5th Cir.1989). To determine the appropriateness of a transfer, a court must consider the "convenience of the parties and witnesses," and should not transfer a case "if the only practical effect is to shift inconvenience from the moving party to the non-moving party." *Spiegelberg v. Collegiate Licensing Co.*, 402 F.Supp.2d 786, 789 (S.D.Tex.2005) (quoting *Goodman Co., L.P. v. A & H Supply Co.*, 396 F.Supp.2d 766, 776 (S.D.Tex.2005) (Rosenthal, J.).

A defendant moving for a venue transfer under Section 1404(a) bears the burden of proving a change of venue is warranted and must show good cause for the transfer. *In re Volkswagen*, 545 F.3d 304, 315 (5th Cir.2008) ("*Volkswagen II*"). To do so, the moving party must demonstrate that the action could have been brought in the suggested venue and also clearly demonstrate that a transfer is for the convenience of parties and witnesses, in the interest of justice. *Id*. "Thus, when the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected. When the movant demonstrates that the

transferee venue is clearly more convenient, however, it has shown good cause and the district court should therefore grant the transfer." *Id.*

The Fifth Circuit adopted the private interest factors and public interest factors in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947) ("the *Gilbert* factors"), for determining whether a Section 1404(a) venue transfer is for the convenience of parties and witnesses and in the interest of justice. *In re Volkswagen*, 545 F.3d at 315. The private interest factors (which go to the interest of the parties and witnesses) are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. *Id.* The public interest factors (which go to the interest of justice) are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *Id.* A court must balance these factors to determine whether the movant has shown "good cause" for the transfer and that the transferee forum is "clearly" more convenient than the chosen forum. *In Re Volkswagen*, 506 F.3d at 384.

"The relative convenience to the witnesses is often recognized as the most important factor to be considered in ruling on a motion under § 1404(a)." *Gundle Lining Const. Corp. v. Fireman's Fund Ins. Co.*, 844 F.Supp. 1163, 1166 (S.D.Tex.1994). *See also*, *i.e.*, *Hills v. Brinks, Inc.*, CIV. A. 07-4207, 2008 WL

243944, at *5 (E.D.La. Jan. 25, 2008) (J. Vance) ("Courts have recognized that the availability and convenience of witnesses is an important factor in a § 1404(a) analysis."); *Neil Bros. Ltd. v. World Wide Lines, Inc.*, 425 F.Supp.2d 325, 329 (E.D.N.Y.2006) ("The convenience of the witnesses is probably the single most important factor in the transfer analysis."); *Medicap Pharms., Inc. v. Faidley*, 416 F.Supp.2d 678, 687 (S.D.Iowa 2006) (same); *Ramsey v. Fox News Network, LLC,* 323 F.Supp.2d. 1352, 1356 (N.D.Ga.2004) (same).

While the plaintiff's choice of venue is accorded some deference, *In re TS Tech USA Corp.*, 551 F.3d 1315, 1320 (5th Cir.2008), the plaintiff's choice of venue is not treated as a distinct factor in the Section 1404(a) analysis. *Id.*; *In Re Volkswagen*, 545 F.3d at 314 n. 10. Instead, the plaintiff's venue choice corresponds to the burden that the moving party must meet in order to demonstrate that the transferee venue is clearly more convenient. *Id.*

## B. Appropriateness of Venue in the Transferee Forum

Ensco does not dispute that venue is proper in the Western District of Louisiana. Ensco, however, seeks to have the action transferred to the Southern District of Texas, Houston Division, where venue is also proper under 28 U.S.C. § 1391(b)(2). Nexen does not dispute that venue could lie in the Southern District of Texas but argues that venue is more convenient in the Western District of Louisiana where the lawsuit was filed. Having established that Nexen could have filed this suit in the proposed alternative venue, the Court now evaluates whether  a transfer is warranted "for the convenience of parties and witnesses, in the interest of justice."

*C. Application of The Private Interest Factors*

*1. The Relative Ease of Access to Sources of Proof:*

The first private interest factor, relative ease of access to sources of proof, weighs in favor of transfer when evidence could be more readily accessed from the proposed transferee district. This case involves three sources of proof that both parties will need to access: witnesses, documents, and the Rig.

*i. Witnesses*

In the hearing on Ensco's motion, Nexen objected to the Declarations of Ensco's HR Department providing address information based on Ensco's business records, generally noting each as a "last known" address. Notably, Nexen's own HR Department's declarations provided only the "last known" addresses of its employee-witnesses. In complying with Judge Hill's order that Ensco provide revised declarations, the record substantiates that Ensco conducted an extensive amount of research and investigation in determining the locations/residences/addresses of both Ensco's and Nexen's potential witnesses. The end result of this arduous endeavor is "Table 1," attached to Ensco's final reply memorandum. *R. 54-2*. There, 24 potential witnesses' locations are substantiated and/or affirmed by LexisNexis Accurint Reports ("Accurent"), Certified County Appraisal Records ("Appraisal"), most of which Judicial Notice was taken, *R. 52,* Declarations by Ensco's HR and executive staff ("Ensco Declaration"), returned e-mail verifications, Ensco's internal "PeopleSoft" Reports, and Declarations by Nexen's HR staff ("Nexen Declaration").

Despite the extent of Ensco's research, Nexen continues to object to Ensco's supplemental declarations. *R. 48.* In particular, Nexen contends that Gallimore did not personally perform the searches but instead reviewed computerized business records gather by employees under her supervision and direction. *Id.* Nexen objects to Pickett's Declaration because she performed searches using Ensco's PeopleSoft software and therefore does not have personal knowledge of her findings. *Id.* Further, Nexen objects to Carol Goehrs' Declaration for lack of personal knowledge in providing the information she researched using "LexisNexis Accurint," and the Appraisal Reports she obtained from websites maintained by various county governments in Texas, Alabama, Mississippi, Arkansas, and Oklahoma, as well as Ouachita Parish, Louisiana. *Id.* Nexen objects to the certified copies of the Appraisal Reports which Ensco filed to supplement Goehrs' website submissions because they were filed "far too late and [ ] Ensco is proposing a substantial misuse of the judicial notice process." *Id.*

Nexen has produced no evidence contrary to that presented by Ensco. Rather, Nexen argues that Ensco's evidence is "inadmissible" and "irrelevant." Finding no jurisprudential support as to the standard for determining admissibility in the context of a motion to transfer, Nexen contends that Ensco must comply with the standard established in Rule 56 for the submission of declarations in support of a motion for summary judgment.

While the admissibility standard to be applied in this case may not have often been litigated, the undersigned has not located, nor has Nexen cited, any jurisprudence which states or implies that a Rule 56 standard applies to a motion to transfer. To the contrary, in *McNair v. Monsanto Co.*, 279 F.Supp.2d 1290 (M.D. Ga.2003), the court specifically disputed that a declaration in a motion to transfer is comparable to that required in a summary judgment motion. The court stated, "[s]ection 1404(a) does not expressly require that an affidavit submitted in support of a transfer motion be based on personal knowledge as Federal Rule of Civil Procedure 56(e) does in regard to summary judgment motions. Similarly, section 1404(a) does not require that affidavits set forth facts as would be admissible into evidence at trial or in connection with a dispositive motion. Federal Rule of Evidence 901(a) provides that the requirement of authenticity or identification, as opposed to admissibility, is met 'by evidence sufficient to support a finding that the matter in question is what its proponent claims.' " *Id. at* 1299.

In *Tingley Systems, Inc. v. Bay State HMO Management, Inc*., 833 F.Supp. 882 (M.D.Fla.1993), the district court considered whether the affiant's statements based on "information and belief" were permitted in his affidavit submitted in support of a motion to transfer. The plaintiff argued that such statements are prejudicial and not based on personal knowledge, and should therefore be disregarded by the court. The defendant argued that section 1404 does not expressly require that an affidavit submitted in support of a transfer motion be based on personal knowledge as Rule 56(e) does in regard to motions for summary judgment. The court agreed with the

defendant, holding that "where an affidavit is not required by statute or some other rule of court to be based on personal knowledge, it is reasonable that such an affidavit need not necessarily contain personal knowledge in order to be sufficient." *Id.* at 884 (citing *State Mutual Life Assurance Co. of America v. Peat, Marwick, Mitchell & Co.*, 49 F.R.D. 202, 213 (S.D.N.Y.1969) ("[I]t has been held that affidavits on information and belief need not be disregarded.") and *Johnston Broadcasting Co. v. Federal Communications Comm'n*, 175 F.2d 351, 354 (D.C.Cir.1949)( "[A]n affidavit, in its ordinary sense and usage, may be upon information and belief. In such case, the affiant does not guarantee the accuracy of the data, but he does assume the responsibility of being satisfied upon the best of his information and belief that the data is accurate.")).

Here, Ensco HR employees, Gallimore and Pickett, have submitted Declarations about the addresses of Encso's employees through company software dedicated to storing employees' personal information. Personal knowledge is reasonably inferred when an affidavit is within the "sphere of responsibility" of the affiant's position as in this case. *DIRECTV, Inc. v. Budden*, 420 F.3d 521, 530 (5th Cir.2005). Also, "[a]n official title alone is enough to indicate the basis of personal knowledge when, as here, that title clearly identifies the official's sphere of responsibility and the facts stated in the affidavit are within that sphere." *Rutledge v. Liab. Ins. Indus.*, 487 F.Supp. 5, 7 (W.D. La.1979) (J. Davis). Record custodians, such as Gallimore and Pickett, are permitted to testify from information contained within business records for which a foundation has been laid under Federal Rule of Evidence 803(6). *United*

13.

*States v. Duncan*, 919 F.2d 981, 985-86 (5th Cir.1990). Gallimore and Pickett have each laid such foundations. *R. 37-1, 43-1, Pickett Dec. ¶ 2; R. 48-2, Gallimore Depo. 18:3 - 19:1.*

Ensco's research provides that 12 of the 24 witnesses are located in the Southern District of Texas, Houston Division:

1.  Eddie Dore, Richmond TX , Nexen former employee (Accurint and Fort Bend Appraisal, *R. 52*)

2.  George Douglas Foster, Fulshear, TX, Ensco former employee (Accurint and Fort Bend County Appraisal, *R. 52*)

3.  Michael Gallucci, Fulshear, TX, Ensco former employee (Ensco Declaration, Accurint, Fort Bend County Appraisal, *R. 52*)

4.  Courtney Gallucci, Fulshear, TX, Ensco former employee (Ensco Declaration, Accurint, Fort Bend County Appraisal, *R. 52*)

5.  Craig Guillot, Katy, TX, Nexen employee (Accurint, Fort Bend County Appraisal, *R. 52*)

6.  Curtis Hebert, La Porte, TX., Ensco employee (e-mail June 1, 2015)

7.  Richard Green, Fulshear, TX., Ensco employee (e-mail June 1, 2015)

8.  David Hensel, Houston, TX.,  Ensco employee (e-mail June 1, 2015)

9.  Steve Savoy, Tomball, TX, Ensco employee-mail June 1, 2015)

10. George Coltrin, Houston, TX, Nexen employee (e-mail June 1, 2015)

11. Jason Morgananelli, Katy, TX,  Ensco employee (e-mail June 1, 2015)

12. Richard Johnston, Houston, TX, Nexen former employee (Accurint, Harris County Appraisal)

The research further provides that four (4) potential witnesses are located in other Districts in Texas:

14.

1.   Wayne Griffith, Buda, TX, Ensco former employee (e-mail verification)

2.   Forrest (Shawn) McDaniels, Beaumont TX, Ensco employee (PeopleSoft Report)

3.   Mark Lloyd, Mount Pleasant, TX, Nexen former employee (Accurint, Titus County Appraisal)

4.   Levi Bailey, Horseshoe Bay, TX, Ensco employee (e-mail verification)

Only one of the potential witnesses resides in Louisiana: Robert Roell, an Ensco employee who lives in Baker, Louisiana, located in the Middle District of Louisiana, as confirmed by Ensco's HR Coordinator Susan Hebert through e-mail communication on June 2, 2015. The remaining six potential witnesses reside outside of Louisiana and Texas: (1) Herb Mayo, Lake View, AL; (2) Dan Burnson, Hot Springs Village, AR; (3) Jerry Greene, Quitman, MS; (4) Chris Smith, Quitman, MS; (5)Terry Griffin, Idabel, OK; and finally, (6) Graham Dagg, Nexen's employee, is located in Girvan, Great Britain.

Ensco has shown that twelve (12) of the potential witnesses reside in the Houston area all in the Southern District of Texas, and one, residing in Beaumont, Texas, is within the subpoena power of the Southern District of Texas, for a total of thirteen (13). While one potential witness resides in Louisiana, he is not in the Western District of Louisiana but is within the subpoena power of the Western District of Louisiana. The other seven (7) potential witnesses reside outside of Texas and Louisiana and/or out of the country, and are not convenient to either venue.

Nexen also argues for the first time, that because this is a case involving the oil industry, "a notoriously capricious employer," Ensco's evidence continues to be

deficient because Ensco failed to ask its current or former employees of their plans for the future. Nexen contends that since many of the prospective witnesses have been and will be laid off by Ensco and Nexen, this case should just remain in the Western District of Louisiana.

Nexen cites no support for this argument which suggests that a §1404 motion to transfer is premature until immediately before trial. Nexen's argument is in conflict with the Fifth Circuit jurisprudence requiring a party to file a motion under § 1404 "with reasonable promptness." *See Peteet v. Dow Chem. Co.*, 868 F.2d 1428, 1436 (5th Cir.1989) ("Parties seeking a change of venue should act with 'reasonable promptness.' 15 C. Wright, A. Miller & E. Cooper, § 3844, at 335–37"). Moreover, the result of Nexen's suggestion would frustrate the foundation of § 1404 itself. *See In re Wyeth*, 406 Fed.Appx. 475, 477 (Fed. Cir.2010) ("Without reasonable promptness on the part of the movant, a case proceeds, requiring the court to expend time and effort that might become wasted upon transfer."). Nexen's argument it without merit. The convenience to the witnesses weighs heavily in support of transfer.

*ii. Physical Evidence - Documents and the Rig*

Nexen contends that because the documents are primarily stored electronically, "neither the Western District of Louisiana nor the Southern District of Texas impair access to the documents relevant to this case." *R. 29, p. 11.* Ensco argues that while this factor is "somewhat neutral," the majority of the electronic documents will come from the respective corporate headquarters of the parties—both in the Southern District of Texas.

Although technological advances have made access to sources of proof more convenient, the advances have not rendered the sources of proof factor superfluous, and the factor is still meaningful in the § 1404(a) analysis. In *Volkswagen II*, the Fifth Circuit held that although technological advancements have generally reduced the discovery burden on parties, this factor is still important, and must be considered carefully. *Volkswagen II*, 545 F.3d at 316. Courts analyze this factor in light of the distance that documents or other evidence must be transported from their existing location to the trial venue. *See Id.* Although documentary evidence is often stored electronically, the Court considers the physical location of documents and other evidence. *In re Genentech, Inc.*, 566 F.3d 1338, 1345–46 (Fed.Cir.2009). Here, all of the documents are located in the parties' corporate offices in the Southern District of Texas, Houston.

The ENSCO 8502 Rig is located in a shipyard in Galveston, Texas where, at the time of filing the briefs, it was being worked on and will then be stacked for storage. *R. 32, Supp. Dec. Of Morganelli*. Thus, any inspection(s) of the Rig will necessarily occur in Galveston, Texas which is in the Southern District of Texas.

The ease of access to the documents and the Rig favor transfer.

*2. The Availability of Compulsory Process to Secure the Attendance of Witnesses*

The next factor to consider is the availability of compulsory process to secure witnesses. Nexen contends, based on Rule 45 of the Federal Rules of Civil Procedure, "the availability of compulsory process to secure attendance of unwilling witnesses is neutral for both deposition-related subpoenas and trial-related subpoenas." Under

17.

Fed.R.Civ.P. 45(b)(2), a federal court may serve a witness anywhere in the United States. This power is limited by Rule 45(c), which provides that a subpoena may command a person to attend a trial, hearing, or deposition only if the person lives, works, or regularly transacts business in person within 100 miles of the courthouse, or who resides, works, or regularly transacts business in person in the state where the trial is held if attending the trial would not cause the witness to incur substantial expense. Fed.R.Civ.P. 45(c)(1)(A)(B).

Thus, the focus of this factor is the consideration of the availability of compulsory process to compel attendance of unwilling non-party witnesses. Ensco has demonstrated that thirteen of the witnesses have been shown to reside in or within the compulsory process range of the Southern District of Texas, six of whom are former employees of Nexen or Ensco. Only one of the witnesses reside within the compulsory process range of the Western District of Louisiana. Thus, the Southern District of Texas is the most convenient as to compulsory process.

Nexen further argues that Rule 43 can be used to subpoena a witness to appear within 100 miles of his home for contemporaneous transmission of his trial testimony. Rule 43 of the Federal Rules of Civil Procedure establishes the rule that witness testimony at trial must be taken in open court, but grants federal courts the authority to permit appearance "in open court by contemporaneous transmission from a different location ." Specifically:

> At trial, the witnesses' testimony must be taken in open court unless a federal statute, the Federal Rules of Evidence, these rules, or other rules adopted by the Supreme Court provide otherwise. For good cause in compelling circumstances and with appropriate safeguards, the court

may permit testimony in open court by contemporaneous transmission from a different location.

Fed. R. Civ. Pro. 43(a). While Nexen's argument is technically correct, the 1996 Advisory Committee Notes to Rule 43 advise against relying on Rule 43 for trial testimony. The 1996 Advisory Committee Notes specifically state:

> Contemporaneous transmission of testimony from a difference location is permitted only on showing good cause in compelling circumstances. **The importance of presenting live testimony in court cannot be forgotten. The very ceremony of trial and the presence of the fact finder may exert a powerful force for truth telling. The opportunity to judge the demeanor of a witness face-to-face is accorded great value in our tradition. Transmission cannot be justified merely by showing that it is inconvenient for the witness to attend the trial**.
>
> The most persuasive showings of good cause and compelling circumstances are likely to arise when a witness is unable to attend trail for unexpected reasons, such as accident or illness, but remains able to testify from a different place. . . .
>
> Other possible justifications for remote transmission must be approached cautiously. . . .

Fed. R. Civ. P. 43. (Emphasis supplied).

This factor does not neutralize the convenience to the witnesses, but instead favors transfer.

### 3. The Cost of Attendance for Willing Witnesses

Nexen attempts to minimize the substantial costs for witnesses to attend trial in the Western District of Louisiana by asserting that it will finance the travel costs for its witness and speculates that Ensco will do the same. Nexen's argument ignores the overall  goals of § 1404(a)—to prevent waste of time, energy, and money, and

also to protect litigants, witnesses, and the public against unnecessary inconvenience and expense. *See, i.e.,Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964).

Here, twelve of the witnesses are located in the Southern District of Texas, and one is less than 100 miles away, while only one witnesses is located within 100 miles of the Western District of Louisiana. This factor supports transfer.

*4. All Other Practical Problems*:

Nexen states that "from [its] perspective" there are a number of practical considerations that make the Western District of Louisiana an easier forum within which to litigate this case. Nexen's attempts to contrast the Lafayette Division courthouse with the Houston Division courthouse with regard to physical, technological and judicial support, are made without evidentiary support. Nor does Nexen provide any support for its argument that it would be less expensive in the Western District of Louisiana due to the lower hotel costs in Lafayette. Notwithstanding that Ensco represents Priceline.com provides rooms in and around the Houston airports which are significantly lower than comparable rooms at the Lafayette airport hotel, the fact that at least 12 additional witnesses who reside in the Southern District of Texas would have to travel to and obtain lodging in the Western District of Louisiana makes this factor favor transfer.

*D. Application of the Public Interest Factors:*

*1. The Administrative Difficulties Flowing from Court Congestion*:

This factor favors a district that can bring a case to trial faster. Nexen and Ensco agree that this factor is neutral.

*2. The Local Interest in Having Localized Interests Decided at Home*:

This factor analyzes the "factual connection" that a case has with the transferee venue and also with the transferor venue. Nexen argues that because "Ensco voluntarily contracted to conduct operations off the coast of Louisiana, then, while doing so, violated the terms of the contract, operated a huge drilling vessel in an unseaworthy manner, and committed several tortious violations." *R. 48*. Thus, under OCSLA, Louisiana has "an evident interest" in this dispute. *Id*. Ensco disputes Nexen's assertion that OCSLA applies in this case. Instead, Ensco asserts because Nexen's claims arise out of an alleged breach of a maritime contract and include a claim for breach of the warranty of seaworthiness, maritime law applies of its own force and state law has no application.

It is not appropriate for this Court to determine what law applies in a motion to transfer nor have the parties thoroughly briefed this issue. Rather, considering the facts, it is evident that the primary cause of action in this case is for breach of a maritime contract. *See R. 8, Nexen's Amended Complaint, ¶ 4.* The Contract was negotiated and executed in Texas and involves two companies whose headquarters are located in Houston. The Contract's place of performance was federal waters on the Outer Continental Shelf in the Gulf of Mexico. The Contract's Primary Term was 731 days, during which wells could be drilled by Nexen anywhere in the Gulf of Mexico, from Texas to Alabama. Even assuming that Louisiana has some kind of interest in this matter, it is not sufficient to determine whether or not venue should be transferred under § 1404. This factor is somewhat neutral.

21.

*3. The Familiarity of the Forum with the Governing Law*:

Nexen argues that the Western District of Louisiana is a more appropriate forum because the District Judge assigned to this case, Judge Doherty, is very familiar with the federal maritime and Louisiana laws necessary to decide the claims at issue, and there is a "significant chance" that any judge assigned to this case in the Southern District of Texas "would have *less* familiarity" with these laws. *R. 48.* (Emphasis in original). While there is no question that Judge Doherty is adept at resolving disputes involving federal maritime law and Louisiana law, to suggest that the District of Southern Texas lacks the experience or ability of the court in this District, "is both an affront to that court and an illusion to be ignored." *See, Cargill Inc. v. Prudential Ins. Co. Of Am.*, 920 F. Supp. 144, 148 (D. Colo. 1996) (rejecting consideration of court's supposed greater familiarity with a particular area of federal law). "[C]ourts will not consider arguments that another district court is "more familiar" with a federal law as reason to transfer." *See, Hamad v. Gates*, C10-591 MJP, 2010 WL 4511142, at *8 (W.D. Wash. Nov. 2, 2010). Accordingly, any perceived expertise of the district court for the District of Western Louisiana is given no weight and this factor is neutral.  *See Cary v. Hall*, C 05-4363 VRW, 2006 WL 6198319, at *2 (N.D. Cal. Nov. 30, 2006).

*4. The Avoidance of Unnecessary Problems of Conflict of Laws or Application of Foreign Laws*:

While the parties dispute whether maritime law applies of its own force or OCSLA has an application in this case, neither party has argued that this case raises

any conflicts of law issues nor is there any issue regarding the application of foreign or unfamiliar law. Accordingly, the undersigned finds that this factor is neutral.

The purpose of the transfer statute is to prevent the waste of time, energy, and money and to protect litigants, witnesses, and the public against unnecessary inconvenience and expense. *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964). The Court finds that the foregoing private and public factors as applied to this case show that the Southern District of Texas is clearly a more convenient forum than the Western District of Louisiana.

### Conclusion

For the foregoing reasons, defendant  Ensco Offshore Company's motion to transfer venue pursuant to 28 U.S.C. § 1404(a) [Rec. Doc. 23] is GRANTED.

This Order shall be **STAYED** for fourteen days from the date of issuance. Any appeal to the District Judge must be filed within fourteen days from the date of this Order. If an appeal is taken to the District Judge, this Order shall remain stayed until the appeal is decided. If no timely appeal is filed, the clerk shall transfer the action forthwith.

THUS DONE AND SIGNED this 27th day of October, 2015, in Lafayette, Louisiana.

CAROL B. WHITEHURST
UNITED STATES MAGISTRATE JUDGE

23.